John M. Keane, S.
This is an application for allowances pursuant to subdivision 6 of SCPA 2302, following a proceeding for *51 the construction of the last will and testament of Mary A. Cordon, deceased.
After providing for the payment of funeral expenses and debts, paragraph “ Second ” of her will made a specific bequest of securities in 13 different companies to Le Moyne College. Then followed four general bequests totaling $18,000 to religious and educational institutions. The residue was left to her sister, Catherine P. Cordon.
The will, executed on October 6, 1961, was clear and precise concerning the number of shares bequeathed to Le Moyne College. However, a construction proceeding was requested because 7 out of the 13 corporations whose shares were mentioned had declared stock dividends or split their shares so that the total shares held by decedent at her death on November 16,1967 varied from the totals in the will. Additionally, decedent had purchased a small number of shares of some of these 7 stocks, usually to round out a dividend.
Counsel for Le Moyne College argued that the changes in the number of shares of the 7 stocks between the date of the will and the date of decedent’s death were of such a nature that Le Moyne College was entitled to the additional shares. Counsel for the residuary legatee opposed this position. This court, in a decree made May 29, 1969, determined that substantially all the additional shares of the 7 stocks passed to Le Moyne College as a specific bequest.
With that determination, the New York estate tax return subsequently filed shows the following disposition of decedent’s estate. Le Moyne College received a specific bequest of $205,976.26; the four religious and educational legatees received general bequests of $18,000, and the residuary legatee, Catherine P. Cordon, received $9,914.74. Out of the $205,976.26 given to Le Moyne College, $64,914.06 was at issue in the construction proceeding. Although it is not a significant factor, Catherine P. Cordon, the residuary legatee, died January 5, 1968, less than two months after her sister, leaving all of her estate to charitable legatees, one of whom was Le Moyne College. For this reason, the controversy over who should pay the allowances is really a quarrel among charities.
Counsel for the estate of the residuary legatee has requested an allowance of $700. Counsel for Le Moyne College has requested $2,650 together with disbursements of $54.09, all of which he asks to be charged to the ‘ ‘ residuary estate. ” We have here, according to the estate tax return, a disposable estate of $233,891, consisting of $205,976.26 passing to Le Moyne College as a specific bequest, $18,000 to other charities, and $9,914.74 *52 passing to the estate of the residuary legatee. Counsel for Le Moyne College seeks to have his requested allowance of $2,650 and disbursements of $54.09 charged entirely against the $9,914.74 residuary estate. Although 7 securities were involved in the construction proceeding, the value of Eastman Kodak accounted for 89% of the total value at issue and American Telephone & Telegraph accounted for 6%.
There is no question that allowances can be made under subdivision 6 of SCPA 2302 in a construction proceeding. There is no question that such allowances may be charged against the particular fund involved or against the total fund before the court or a combination of the two. In support of his position, counsel for Le Moyne College relies strongly upon Matter of Ablett (3 N Y 2d 261). Persuasive indeed is the language of that decision. While a decision may achieve a vitality wholly apart from the set of facts which brought it into being, it is still best understood when considered in relation to the problem which was before the court that made the decision. What were the facts in the Ablett case?
In Matter of Ablett (supra) a trust had terminated upon the death of the life beneficiary. After payment of two general bequests out of the corpus, the balance in excess of $800;000 was payable equally to five named charitable organizations. Four were charitable organizations located in Oneida County where the decedent was domiciled. The fifth charitable organization was the London Hospital in London, England.
There was no question about the disposition of 80% of the corpus going to the four local charities. Controversy arose over the disposition of the 20% payable to the London Hospital because during the period of the trust Parliament had enacted the National Health Act under which all hospitals were taken over by the government. Vigorous and learned arguments were made in all courts that the gift to the London Hospital failed. Bather appropriately not far from where General Herkimer battled valiantly in the Battle of Oriskany against the forces of George III, the four local charities argued strongly that the 20% payable to the London Hospital should be paid to them and not to Elizabeth II. Joining the four local charities in their opposition to Her Britannic Majesty were the heirs of the decedent who would take in an intestacy. They agreed with the four local charities to eliminate the London Hospital. They disagreed as to the proposed disposition because they claimed the 20% should pass to them as in an intestacy.
The Surrogate found that the bequest was valid to the successor in interest of London Hospital. Counsel for the London *53 Hospital requested an allowance of $25,000; counsel for the four charities requested total allowances of $22,500, and counsel for the heirs requested an allowance of $10,000. All of these requests totaling $57,500, of course, were based upon the help and assistance rendered to the court in the construction proceeding.
The Surrogate allowed counsel for the London Hospital $10,000; counsel for the four local charities $11,250, and counsel for the heirs $3,750, for total allowances of $25,000. The decree also directed that this sum be paid out of the corpus which meant that it was paid equally by the five charities.
The four local charities objected strenuously to this allocation and were granted a reargument. The Surrogate adhered to his original decision which was later upheld by the Appellate Division and the Court of Appeals. Thus all of the charities paid their own legal fees plus the allowance to counsel for the heirs. Actually, the four local charities also paid a small part of the allowance to counsel for the London Hospital.
The court has carefully read Matter of Griffing (31 Misc 2d 266) where allowances were charged to the corpus. That case involved a stock split made by General Electric. In the record on appeal of Matter of Griffing (9N Y 2d 919) which was the construction aspect of the proceeding, it appeared that the gross estate was around $900,000.
After a few small bequests, decedent left his estate in two trusts, both for the benefit of his wife. Hpon his wife’s death, he gave 200 shares of General Electric stock to his stepson. The remainder was given to his two children. During decedent’s lifetime General Electric had a stock split of 2 shares for 1. The stepson claimed 600 shares. The two children as remaindermen argued that only 200 shares should be delivered to the stepson. At the time of the construction proceeding General Electric shares had a value around $80 per share.
It is not clear whether the shares came from the combined corpora or only the corpus of the second trust. Even if limited to the second trust, the gross value before taxes and expenses would have been $450,000. The Court of Appeals sustained the modification made in 11 A D 2d 709 by which 600 shares were awarded to the stepson instead of 200 shares given in the Surrogate’s Court reported at 17 Mise 2d 802.
In the proceeding for allowances (at 31 Mise 2d 266), $1,500 was awarded to counsel for the residuary legatees and $4,500 to counsel for the specific legatee, both amounts being made chargeable to the ‘ ‘ general estate ’ ’ which, in this instance, was the corpus at the termination of the trust. Counsel for the specific *54 legatee had requested an allowance of $11,000 payable from the ‘ ‘ general estate ’ ’ and counsel for the residuary legatees requested an allowance of $1,500 payable from the shares involved. The Surrogate stated that the value of the stock involved in the construction proceeding did not exceed $30,000.
In the Griffing case (supra) the amount involved in the construction was small in relation to the whole amount before the court. This court believes equity was served by charging the allowance awarded to counsel for the specific legatee against the much larger fund.
The opposite is true here where both the amount involved in the construction and the total amount payable to Le Moyne College are so much larger than the small residuary share.
Counsel for Le Moyne College, whose share of $205,976.26 represents 95% of the total fund before the court (the $18,000 given in general legacies not being involved herein), now seeks to impose upon the remaining 5% balance, amounting to $9,914.74 payable to the estate of the residuary legatee, any allowance made to them for services in this proceeding. In view of the disproportionate shares of the two parties involved, it does not seem equitable or fair to this court to charge the extremely small residuary share with expenses of counsel fees for Le Moyne College.
Bather, this court believes that each should pay his own fee, following the rationale of only the result in Matter of Sinclair (56 Misc 2d 554).
Since counsel for the estate of the residuary legatee seeks an allowance, no problem is encountered in charging that request against the residuary legatee’s share. Therefore, this court determines that $700 shall be allowed to • Hinman, Howard & Kattell as an allowance for services rendered on behalf of the estate of the deceased residuary legatee. The sum of $2,650, togther with disbursements of $54.09, shall be allowed to Bond, Schoeneck & King, counsel for Le Moyne College, to be paid by Le Moyne College.
Finally, in Matter of Storm (35 Misc 2d 275, 276-278) appears the following language which is applicable here: ‘ ‘ The court in fixing these allowances does not necessarily determine the full value of the services which the respective attorneys may have rendered to their clients. The awards made in this case are without prejudice to the right of counsel to seek from their clients any additional compensation that may seem just and proper in the circumstances.” (See, also, Matter of Charles, 2 Misc 2d 928 and Matter of Gibson, 10 Misc 2d 282.)